UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF DELAWARE

REBECCA STONEBRAKER,  )
        Plaintiff )
         )
v. ) Case No.:
 )
BYRON & DAVIS, C.C.C.C., INC., ) COMPLAINT AND DEMAND FOR
 ) JURY TRIAL
        Defendant )
 ) (Unlawful Debt Collection Practices)

## COMPLAINT

REBECCA STONEBRAKER ("Plaintiff"), by her attorneys, KIMMEL & SILVERMAN, P.C., alleges the following against BYRON & DAVIS, C.C.C.C., INC. ("Defendant"):

## INTRODUCTION

1. Plaintiff's Complaint is based on the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA").

## JURISDICTION AND VENUE

2. Jurisdiction of this court arises pursuant to 15 U.S.C. § 1692k(d), which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy," and 28 U.S.C. § 1331 grants this court original jurisdiction of all civil actions arising under the laws of the United States.

3. Defendant conducts business and has an office in the State of Delaware and therefore, personal jurisdiction is established.

4. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

5. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

6. Plaintiff is a natural person residing in Newark, Delaware, 19713.

7. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

8. Defendant is a debt collection company with corporate headquarters located at 601 Philadelphia Pike, in Wilmington, Delaware, 19809.

9. Defendant is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and repeatedly contacted Plaintiff in an attempt to collect a debt.

10. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## PRELIMINARY STATEMENT

11. The Fair Debt Collection Practices Act ("FDCPA") is a comprehensive statute, which prohibits a catalog of activities in connection with the collection of debts by third parties. See 15 U.S.C. § 1692 *et seq*. The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. 15 U.S.C. § 1692k. The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

12. In particular, the FDCPA broadly enumerates several practices considered contrary to its stated purpose, and forbids debt collectors from taking such action. The substantive heart of the FDCPA lies in three broad prohibitions. First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. And third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The FDCPA is designed to protect consumers from unscrupulous collectors, whether or not there exists a valid debt, broadly prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and any false, deceptive or misleading statements in connection with the collection of a debt.

13. In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692a. Congress additionally found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers. 15 U.S.C. § 1692b.

14. Congress enacted the FDCPA to regulate the collection of consumer debts by debt collectors. The express purposes of the FDCPA are to "eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e.

PLAINTIFF'S COMPLAINT

## FACTUAL ALLEGATIONS

15. At all relevant times, Defendant was attempting to collect an alleged consumer debt from Plaintiff.

16. The alleged debt at issue arose out of transactions, which were primarily for personal, family, or household purposes.

17. Beginning on or around early 2008 and continuing until March of 2010, Defendant, its agents, employees, and servants, engaged in debt collection activities seeking payment from Plaintiff.

18. Defendant was attempting to collect debts allegedly owed by Plaintiff on three (3) medical bills.

19. Plaintiff requested that Defendant send her a statement. Defendant waited several months to submit a written statement and upon receiving it, Plaintiff, acting in good faith promptly remitted payment to Defendant.

20. Plaintiff waited several more weeks for Defendant to send written verification that it had received Plaintiff's payment.

21. Defendant continued its collection efforts and Plaintiff again in good faith continued to make payments, paying off one account in its entirety. During this time period, Plaintiff requested that Defendant update statements, so that accurate records could be kept of payments made by Plaintiff. Defendant refused to send any more written statements, and continued its collection efforts by calling Plaintiff.

22. Plaintiff sent Defendant written correspondence, informing Defendant that without a written statement she was reluctant to make any further payments, because she felt

that the previous payments she made where not being credited to her accounts.

23. Defendant and its employees identified as "Anthony" and "Jeff", disregarded the letter and harassed Plaintiff in an attempt to collect the alleged debt.

24. Defendant, its employees and servants harassed Plaintiff by making continuous calls to her home telephone number.

25. Plaintiff received phone calls and voice messages from Defendant on a number of occasions from the following phone number (302) 792-2334. The undersigned has confirmed that the number belongs to Defendant.

26. Defendant placed repeated calls to Plaintiff's telephone almost every day, causing Plaintiff to receive, at times, more than four (4) collection calls per day.

27. Defendant placed repeated calls to Plaintiff's telephone almost every day, causing Plaintiff to receive, at times, more than ten (10) collection calls a week and at times, more than twenty (20) collection calls per month.

28. Defendant has contacted Plaintiff as late as 9:45 in the evening.

29. On many occasions, Defendant's calls were placed within minutes of prior calls it had made to Plaintiff.

30. Plaintiff has requested Defendant cease with the telephone calls, but Defendant has refused and the harassing calls persisted.

31. On March 16, 2010, Plaintiff again informed Defendant that without a written statement she was reluctant to make any further payments, because she felt that the previous payments she made where not being credited to her accounts.

32. Again Defendant refused to send any written statements to Plaintiff.

33. Defendant then proceed to tell Plaintiff that she would be taken to court, a lien

PLAINTIFF'S COMPLAINT

would be taken out against her property and her wages would be garnished if she did not make payments.

34. Plaintiff responded to Defendant that she did not own a home and that Defendant needed to cease and desist from calling Plaintiff. Plaintiff then hung up the telephone.

35. Defendant immediately called Plaintiff back.

36. Additionally Defendant has contacted Plaintiff's father assuming him to be Plaintiff's spouse and without confirming who he [Plaintiff's father] was prior to engaging him in discussion, divulged Plaintiff's complete collection account history with him.

37. This was highly embarrassing to Plaintiff.

38. Defendant advised Plaintiff's father that it intended to sue Plaintiff, place a lien on her property, and/or garnish her wages if he [Plaintiff's father] failed to pay the alleged debt.

39. To date, despite threats to the contrary, Defendant has not filed a lawsuit or taken other legal action against Plaintiff, thereby indicating it did not intend to take the action previously threatened.

40. Defendant has failed to provide any documentation detailing the payments, interest, and late charges, if any, thereby making it impossible for Plaintiff to determine whether or not the alleged debt was correctly calculated and whether she has paid off her debt obligation.

41. Upon information and belief, Defendant acted with malicious, intentional, willful, reckless, negligent and wonton disregard for Plaintiff's rights with the purpose of coercing Plaintiff into paying the alleged debt and that Defendant thereby caused Plaintiff harm.

## CONSTRUCTION OF APPLICABLE LAW

42.  The FDCPA is a strict liability statute. Taylor v. Perrin, Landry, deLaunay & Durand, 103 F.3d 1232 (5th Cir. 1997). "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." Russell v. Equifax A.R.S., 74 F. 3d 30 (2d Cir. 1996); see also Gearing v. Check Brokerage Corp., 233 F.3d 469 (7th Cir. 2000) (holding unintentional misrepresentation of debt collector's legal status violated FDCPA); Clomon v. Jackson, 988 F. 2d 1314 (2d Cir. 1993).

43.  The FDCPA is a remedial statute, and therefore must be construed liberally in favor of the debtor. Sprinkle v. SB&C Ltd., 472 F. Supp. 2d 1235 (W.D. Wash. 2006). The remedial nature of the FDCPA requires that courts interpret it liberally. Clark v. Capital Credit & Collection Services, Inc., 460 F. 3d 1162 (9th Cir. 2006). "Because the FDCPA, like the Truth in Lending Act (TILA) 15 U.S.C §1601 *et seq.*, is a remedial statute, it should be construed liberally in favor of the consumer." Johnson v. Riddle, 305 F. 3d 1107 (10th Cir. 2002).

44.  The FDCPA is to be interpreted in accordance with the "least sophisticated" consumer standard. See Jeter v. Credit Bureau, Inc., 760 F.2d 1168 (11th Cir. 1985); Graziano v. Harrison, 950 F. 2d 107 (3rd Cir. 1991); Swanson v. Southern Oregon Credit Service, Inc., 869 F.2d 1222 (9th Cir. 1988). The FDCPA was not "made for the protection of experts, but for the public - that vast multitude which includes the ignorant, the unthinking, and the credulous, and the fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced." Id. The least sophisticated consumer standard serves a dual purpose in that it ensures protection of all consumers, even naive and trusting, against deceptive collection

practices, and protects collectors against liability for bizarre or idiosyncratic interpretations of collection notices. Clomon, 988 F. 2d at 1318.

## COUNT I
## DEFENDANT VIOLATED THE
## FAIR DEBT COLLECTION PRACTICES ACT

45. In its actions to collect a disputed debt, Defendant violated the FDCPA in one or more of the following ways:

    a. Defendant violated of the FDCPA generally;

    b. Defendant violated § 1692b(2) of the FDCPA by stating to a third person that Plaintiff owed a debt to another person, specifically the third person being her father;

    c. Defendant violated § 1692c(a)(1) of the FDCPA when it contacted the Plaintiff at an unusual time or place or a time and place known or should be known to be inconvenient to the Plaintiff, specifically after 9:00 p.m., in connection with the collection of a debt;

    d. Defendant violated § 1692c(b) of the FDCPA by communicating with Plaintiff's father about a debt alleged to be owed by Plaintiff without Plaintiff's prior consent;

    e. Defendant violated § 1692d of the FDCPA by harassing Plaintiff in connection with the collection of an alleged debt;

    f. Defendant violated § 1692d(5) of the FDCPA, when it caused the Plaintiff's telephone to ring repeatedly or continuously with the intent to harass, annoy or abuse Plaintiff;

g. Defendant violated § 1692e of the FDCPA by using false, deceptive, or misleading representations or means in connection with the collection of a debt;

h. Defendant violated § 1692e(5) of the FDCPA by threatening to take action that cannot legally be taken or that is not intended to be taken;

i. Defendant violated § 1692e(10) of the FDCPA by using false representations or deceptive means to collect or attempt to collect a debt;

j. Defendant violated § 1692f of the FDCPA by using unfair and unconscionable means with Plaintiff to collect or attempt to collect a debt;

k. Defendant acted in an otherwise deceptive, unfair and unconscionable manner and failed to comply with the FDCPA.

WHEREFORE, Plaintiff, REBECCA STONEBRAKER, respectfully pray for a judgment as follows:

a. All actual compensatory damages suffered pursuant to 15 U.S.C. § 1692k(a)(1);

b. Statutory damages of $1,000.00 for each violation of the FDCPA pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c. All reasonable attorneys' fees, witness fees, court costs and other litigation costs incurred by Plaintiff pursuant to 15 U.S.C. § 1693k(a)(3); and

d. Any other relief deemed appropriate by this Honorable Court.

PLAINTIFF'S COMPLAINT

## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiff, REBECCA STONEBRAKER, demands a jury trial in this case.

RESPECTFULLY SUBMITTED,

DATED: 1-14-11

KIMMEL & SILVERMAN, P.C..

By: /s/ W. Christopher Componovo
W. Christopher Componovo
Attorney ID # 3234
Kimmel & Silverman, PC
Silverside Carr Executive Center
501 Silverside Road, Suite 118
Wilmington, DE 19809
(302) 791-9373 phone
(302) 791-9476 fax

PLAINTIFF'S COMPLAINT